UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN QUIGLEY, as Administrator of the Estate of SCOTT QUIGLEY, JR., deceased,

Plaintiff,

v.

No. 09-cv-14221
Hon. Gerald E. Rosen
Hon. Mag. Paul J. Komives

CORRECTIONAL MEDICAL SERVICES, INC., *et al*.,

Defendants.
___________________________________/

OPINION AND ORDER DENYING DEFENDANT THAI'S
MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S. Courthouse, Detroit, Michigan on July 23, 2010

PRESENT: Honorable Gerald E. Rosen
Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Allen Quigley filed this prisoner civil rights matter on October 27, 2009, as administrator of the estate of Scott Quigley, Jr. (the "decedent"), pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Dr. Tuong V. Thai, M.D., and Steven Garver, a physician's assistant, both employees of the Michigan Department of Corrections and/or Correctional Medical Services, Inc., violated the decedent's Eighth Amendment right to have serious medical needs addressed while Mr. Quigley was incarcerated by prescribing and administering two drugs in combination that may have caused Mr. Quigley's death.

Plaintiff further alleges that Defendants' actions constitute gross negligence under Michigan law.[1]

On April 1, 2010, while discovery in this matter was ongoing, Defendant Thai moved for summary judgment on qualified immunity grounds. Because qualified immunity protects a public official from the burden of further litigation, *see Pearson v. Callahan*, – U.S. –, 129 S. Ct. 808, 815 (2009), on April 29, 2010, the Court ordered a stay of discovery pending resolution of this motion.

The Court now addresses Defendant's motion for summary judgment. Having reviewed the parties' briefs in support of and in opposition to Defendant's motion, the accompanying exhibits, and the record as a whole, the Court finds that the relevant facts, allegations, and legal arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court finds that this motion must be granted with respect to Defendant Thai's qualified immunity claim.

## II. FACTUAL BACKGROUND

Scott Quigley, Jr., deceased, was a 23-year-old man with no known life-threatening physical ailments or conditions. On February 13, 2008, Mr. Quigley was transferred from the custody of one Michigan Department of Corrections (MDOC) facility to another, the Charles Egeler Reception and Guidance Center. In the month that

[1] Plaintiff filed a motion for leave to amend/correct the Complaint in order to add a state law claim of medical malpractice. (Dkt. # 26.)

followed, Mr. Quigley was under the medical supervision and care of Correctional Medical Services, Inc. (CMS), a contracted service provider of MDOC. At the Guidance Center, MDOC/CMS employees, psychiatrist Dr. Tuong V. Thai and physician's assistant Steven Garver, treated Mr. Quigley for moderate depression.

The medical intake assessment completed on February 13, 2008, by a registered nurse at the Guidance Center facility reflects that at the previous MDOC facility Mr. Quigley had been taking Amitriptyline 50 mg, a tricyclic anti-depressant medication also known by the brand name Elavil (hereinafter "Elavil"). The nurse recommended further psychiatric evaluation and treatment.

The next day, on February 14, 2008, Mr. Garver completed a physical examination of Mr. Quigley and prescribed three months of Elavil.

A few weeks later, on March 7, 2008, Dr. Thai conducted a "Comprehensive Psychiatric Assessment" of Mr. Quigley. Dr. Thai's assessment record reflects that he discussed the Elavil with Mr. Quigley. Mr. Quigley expressed an interest in trying a different anti-depressant. Dr. Thai then prescribed Trazodone 100 mg, a tetracyclic anti-depressant medication also known by the brand name Desyrel (hereinafter "Desyrel") for a four-week trial period.[2] Further, the assessment record indicates that Dr. Thai discussed the side effects of Desyrel with Mr. Quigley.

---

2 Although MDOC medical records liberally interchange the brand name and generic names of these medications, the general documentation provided by Plaintiff describing the risk from Serotonin Syndrome (described *infra*) discusses that the key concern is mixing a "tetracyclic" and a "tricyclic" medication, regardless of the brand or generic name of the medication.

On March 10, 2008, Mr. Quigley was found dead in his cell. Mr. Quigley's Medical Assessment Record, a medication chart, confirms that Mr. Quigley was administered both drugs the previous three days. The Emergency Treatment Nursing Notes, the emergency form completed upon discovery of his death, also confirm that Mr. Quigley was administered both drugs at least on March 9, 2010.

There are no documents in the record definitively ascertaining Mr. Quigley's cause of death. Plaintiff provides the affidavit of psychiatrist Dr. Gerald A. Shiener, M.D., and accompanying documentation that indicate that these two types of drugs in combination are known—at least within the psychiatric field—to be dangerous because they can cause "Serotonin Syndrome." The syndrome is known to be potentially lethal through effects such as hyperthermia caused by the heightened activity of the body's central nervous system. Plaintiff further proffers the testimony of Dr. Werner Spitz, M.D., a board certified forensic pathologist, that the administering of the two drugs in combination more likely than not caused Mr. Quigley's death.

## III. ANALYSIS

### A. Summary Judgment Standards Governing this Motion

Defendant Thai seeks summary judgment in his favor on Plaintiff's § 1983 federal claims as well as the Michigan state-law claim on qualified immunity grounds.[3] Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery

[3] As to the state law claims, Defendant concedes that Plaintiff's allegations may rise to the level of a "garden variety" medical malpractice claim, but he argues that the Court should decline to exercise supplemental jurisdiction over them if the § 1983 claims are dismissed. (Mot. for Summ. J. 3.)

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). In addition, where a moving party seeks an award of summary judgment in its favor on an issue as to which it bears the burden of proof, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat

summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B. Qualified Immunity Standards**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Defendant Thai has claimed qualified immunity as a service provider for the state of Michigan, who was acting in that official capacity when treating Mr. Quigley. The Supreme Court recently held that qualified immunity necessarily balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, – U.S. –, 129 S. Ct. 808, 815 (2009). To overcome a public official's claim of qualified immunity, a plaintiff must show that the facts, taken in a light most favorable to the plaintiff, would allow a reasonable fact finder to determine (1) that there was a violation of a constitutional right, and (2) that the right was "clearly established" at the time of the violation. *See generally Pearson*, 129. S. Ct. 808.[4] In the Sixth Circuit, federal courts may also consider whether the official's actions were "objectively

[4] *Pearson* provided district courts discretion to decide the order in which to address these two prongs of the analysis, overturning, in part, the earlier qualified immunity standard set out in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), which rigidly structured the analysis. Nonetheless, the *Saucier* approach of initially exploring whether there was a constitutional violation is still often beneficial, *Pearson*, 129 S. Ct. at 815, and is therefore employed here.

reasonable" in the context of the facts. *See Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)). Thus if the official's actions were objectively reasonable, even if those actions constitute a constitutional violation of a clearly established right, the official may still be entitled to qualified immunity. *Id.*

Once qualified immunity has been invoked, the burden is squarely on the plaintiff to show that qualified immunity is inappropriate. *See Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

**C. Violation of a Constitutional Right**

The Eighth Amendment of the U.S. Constitution prohibits cruel and unusual punishment. U.S. CONST. amend. XIII; *see Wilson v. Seiter*, 501 U.S. 294, 296-97, 111 S. Ct. 2321 (1991). Violations of a prisoner's Eighth Amendment rights with respect to medical care "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285 (1976). Allegations of malpractice or negligent treatment are insufficient to entitle a plaintiff to relief. *Id.* To state a viable Eighth Amendment claim, a prisoner must show both an objective and a subjective component. The objective component requires a showing that the prisoner was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994); *accord Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The subjective component requires a showing that the prison officials acted with deliberate indifference or recklessness, that is more than mere negligence. *See Farmer*, 511 U.S. at 834-37. "The objective 'medical need' element

measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

For the reasons set forth below, the Court finds that, at this juncture in the proceedings, Plaintiff has presented sufficient proof to create a genuine issues of material fact as to whether Dr. Thai's course of treatment permits him to avail himself of a qualified immunity defense on the issues of substantial risk of serious harm and sufficiently culpable state of mind.

**1. A Serious Medical Need**

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation *only if those needs are serious*." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995 (1992) (emphasis added). In *Estelle*, the Supreme Court recognized that medical needs constitutionally requiring medical attention range from "the worst cases," producing "physical torture or a lingering death," to "less serious cases," resulting from the "denial of medical care," which could cause "pain and suffering." *Estelle*, 429 U.S. at 103, 97 S. Ct. at 290. The "seriousness" of an inmate's medical needs may be decided by reference to the effect of a delay in or the adequacy of treatment. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001); *cf. Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (describing a separate branch of Eighth Amendment claims in which the seriousness of medical needs are assessed using an "obviousness" approach). In such cases, the prisoner must place verifying medical evidence in the record

establishing the detrimental effect of the delay or adequacy of treatment. *See id.* ("This approach seems practical and logical and will often afford the court with the best available evidence on the question of whether the alleged deprivation is sufficiently serious, and whether the inmate is incarcerated under conditions posing a substantial risk of serious harm." (internal quotations omitted)).

In this case, Plaintiff has proffered medical evidence from which it could be circumstantially inferred that the treatment Mr. Quigley received for depression caused his death. As the record now stands, there is no evidence to controvert this causal theory. Moreover, the parties do not appear to dispute that fatal effects of a possible drug interaction would satisfy the "objective" requirement of Plaintiff's Eighth Amendment claim—treatment that causes death in an otherwise healthy inmate rises to the level of a "substantial risk of harm" warranting constitutional protection. To the extent that Defendant Thai challenges the actual causal connection between the prescription of Elavil and Desyrel in combination and Mr. Quigley's death, such dispute is a factual issue warranting further discovery.

**2. Sufficiently Culpable State of Mind**

Turning to the subjective prong of Plaintiff's claim, the Court finds that there is similarly an issue of fact as to whether Dr. Thai knew the nature of the risk inflicted by prescribing a four-week trial of Desyrel when he knew Mr. Quigley was already taking Elavil. Summary judgment at this stage is, therefore, improper.

The subjective component requires a showing that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety. *Wilson,* 501 U.S. at

302-03, 111 S. Ct. 2321. Deliberate indifference, which is more than negligence but less than an intention to do harm, is "routinely equated with recklessness." *Farmer*, 511 U.S. at 836. Under the Eighth Amendment, deliberate indifference must be demonstrated by proof of the official's subjective knowledge and awareness of the medical risk to "prevent the constitutionalization of medical malpractice claims." *Comstock*, 273 F.3d at 703 (finding a prison psychiatrist's removal of a prisoner from suicide watch deliberately indifferent because the psychiatrist perceived and then actively disregarded the risk to the prisoner).[5] "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The Sixth Circuit also holds that a "doctor must provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm." *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th. Cir. 2001) (denying a surgeon's request for qualified immunity because he "had both drawn and disregarded" a risk "and then failed to take the action that his training indicated was necessary").

In the context of qualified immunity analysis, given the dearth of information in the record, it is "permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge, thus finding subjective knowledge based on the obviousness of the risk." *Comstock*, 273 F.3d at 703 (citing Farmer, 511

---

[5] The subjective component is meant to protect against "obduracy and wantonness, not inadvertence or error in good faith." *Wilson*, 501 U.S. 294, 299 (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078 (1986)). "The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." *Id.* at 300 (emphasis in original).

U.S. at 842). At the same time, "prison officials may not be held liable if they prove that they were unaware of even an obvious risk." *Id.*

Here, Plaintiff has presented factual evidence, which when viewed in a light most favorable to him, would prove that Dr. Thai was aware of facts that supported an inference of a substantial risk of serious harm to Mr. Quigley and that Dr. Thai both drew and disregarded that inference when he prescribed Mr. Quigley Desyrel on March 7, 2007, then failed to take the action that his training indicated was necessary to closely monitor Mr. Quigley for possible harmful side effects. It is undisputed that Dr. Thai was aware that Mr. Quigley was already taking Elavil when they met for a psychiatric assessment. Dr. Thai discussed Elavil and the possible side effects of Desyrel in the same meeting on March 7, 2007, and he made notes on both drugs in the same medical record. He made no notes indicating that the prison should stop dispensing Elavil when the four-week course of Desyrel was started. In addition, Plaintiff has submitted medical testimony and evidence indicating that the risk of "Seratonin Syndrome" when mixing a "tetracyclic" and a "tricyclic" medication is well known in the psychiatric community. As the Supreme Court explained in *Farmer*, a prisoner "need not show that [the] prison official acted or failed to act believing that harm actually would befall [the prisoner to prove a violation of his Eighth Amendment right]; it is enough [for the prisoner to show] that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Viewing these facts in a light most favorable to Plaintiff and cognizant of the relative dearth of evidence in the record given the early stage of discovery, the Court finds that a reasonable jury could conclude that Dr. Thai

was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and [he] ignored that risk." *Farmer*, 511 U.S. at 837, 114 S. Ct. 1970. At the very least, it is possible to infer from circumstantial evidence that Dr. Thai failed to take the action or precautions that his training indicated were necessary—an inference sufficient to conclude he acted with deliberate indifference to Mr. Quigley's serious medical needs.

**D. Clearly Established Right**

The Court also concludes that Plaintiff has shown that the allegedly violated right was clearly established.

The determination of whether a right is clearly established in qualified immunity cases is heavily fact-dependent, turning on how closely settled areas of law in precedential cases match a particularized definition of the alleged violated right. *See Saucier*, 533 U.S. at 202. Plaintiff's burden, therefore, is to demonstrate how the "contours" of the case at bar closely match and are supported by unambiguous precedent. *Id.*; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987). The necessary level of specificity of the right is the crux of this analysis and the standard is designed to be wary of overgeneralization. For example, in *Anderson* the Supreme Court assessed whether a claimed violation of the Fourth Amendment was a violation of a clearly established right. *Anderson*, 483 U.S. at 640-641. Specifically, the plaintiff argued that "the right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances" was a clearly established right. *Id.* at 640. The Supreme Court disagreed, finding that such a formulation was too general

to articulate a clearly established right, particularly where "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Id.* at 641. The Court reasoned:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640 (internal citations omitted); *see also Harlow*, 457 U.S. at 818 (holding that the purpose of the clearly established requirement is to determine, objectively, whether at the time of the violation the official could reasonably be expected to "know that the law forbade [the specific] conduct" and thus reasonably "anticipate subsequent legal development"); *Perez v. Oakland County*, 466 F.3d 416, 427 (6th Cir. 2006), cert. denied 552 U.S. 823, 128 S. Ct. 166 (2007).

"In determining whether a reasonable officer would have known that his conduct was unlawful, this Court looks first to the precedents of the Supreme Court, then to case law from this circuit, and finally to decisions from other circuits." *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006). However, the case law need not match on "all fours." "[O]fficials can still be on notice that their conduct violates established law

even in novel factual circumstances." *Safford Unified Sch. Dist. v. Redding*, --- U.S. ---, 129 S. Ct. 2633, 2643 (2009).[6]

As discussed above, a prisoner has a right not to have his serious medical needs disregarded by his doctors. *Estelle*, 429 U.S. at 104, 97 S. Ct. 285. It follows that a prisoner should not be recklessly endangered by his doctors' medical treatment when he is otherwise a healthy individual. Assuming that a jury accepts the facts as alleged by Plaintiff and believes the testimony of Drs. Shiener and Spitz, in which both claimed that a psychiatrist must have been aware of the risk posed to Mr. Quigley, then Dr. Thai's actions cannot reasonably be considered to be the result of a mere reasonable mistake or negligence but only the result of a conscious disregard for Mr. Quigley's health and safety. It is clearly established that:

> Although a government doctor is entitled to qualified immunity if he has merely made a reasonable mistake in his medical judgment, he is not entitled to such immunity if he correctly perceived all the relevant facts, understood the consequences of such facts, and disregarded those consequences in his treatment of a patient.

*LeMarbe*, 266 F.3d at 440. Thus, if a doctor knows of a substantial risk of serious harm to a patient and is aware that he must avoid prescribing certain drugs in combination or closely monitor a patient who has been prescribed and administered those drugs for possible fatal side effects, that doctor has treated the patient with deliberate indifference.

[6] The Supreme Court has also acknowledged that there are few actions that, while not on record as unconstitutional, may be so obviously egregious that a generally stated principle is actually sufficient. *See United States v. Lanier*, 520 U.S. 259, 271, 117 S. Ct. 1219 (1997) (providing the extreme example that if a child welfare worker sold foster children into slavery that would not require precedent directly on point to be considered clearly established as violating a constitutional right) (citing *K. H. Through Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990)).

Although as Defendant points out, there appear to be no federal cases directly holding that harmful, even fatal, drug interaction that results from prison medical care amounts to cruel and unusual punishment, there is ample case law indicating that delayed or egregiously inadequate medical treatment resulting in death or severe injury gives rise to an Eighth Amendment claim. *See, e.g.*, *Phillips v. Roane County*, 534 F.3d 531 (6th Cir. 2008) (denying a prison doctor qualified immunity because of delays over several days in treating pre-existing diabetes and vomiting that led to the inmate's death); *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004) (denying a prison medical official qualified immunity because of two-day delay in diagnosing and treating appendicitis, after prisoner showed obvious signs of illness); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 841 (6th Cir. 2002) (denying psychiatric hospital doctors qualified immunity for having provided "grossly inadequate medical care" to an involuntarily committed psychiatric patient with multiple, undiagnosed, and pre-existing medical needs of which he eventually died); *LeMarbe*, 266 F.3d 429 (denying a prison medical official qualified immunity because of his allegedly inadequate treatment during a surgery intended to address an inmate's pre-existing abdominal pain); *Comstock*, 273 F.3d at 700, 711 (denying a prison medical official qualified immunity because his of allegedly inadequate responses to an inmate's pre-existing suicidal tendencies when the inmate then committed suicide); *Weeks v. Chaboudy*, 984 F.2d 185 (6th Cir. 1993) (denying a prison doctor qualified immunity because the official allegedly denied a paraplegic inmate access to a wheel chair); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)

(denying a prison official qualified immunity because of an alleged refusal to treat a pre-existing bleeding ulcer).

In the context of a drug interaction, the question of a doctor's culpability for purposes of qualified immunity analysis falls on a continuum. On one end of the continuum, obviously, a drug interaction which is widely known and clearly recognized to cause fatal or serious injury would certainly give rise to an inference that a doctor acted with reckless disregard of that knowledge if that doctor were to prescribe such drugs in combination. On the other end of the spectrum, an interaction which is not widely known or not clearly recognized would not give rise to such an inference. In this case, Plaintiff has produced evidence to suggest that the risk of the drug interaction at issue was widely known and that a reasonable psychiatrist in Dr. Thai's position would have concluded that a substantial risk of fatal or serious injury would result from the prescription of the two drugs in combination. The Court must accept this evidence as true. Given the facts known at this time, the Court is unable to make a determination as to whether Dr. Thai's conduct in light of the medical documentation of this drug interaction was merely a mistake in medical judgment. Therefore, a grant of qualified immunity is not warranted.

**E. State Law Claims**

Having concluded that summary judgment is not warranted at this stage of the proceedings on Plaintiff's Section 1983 claim against Dr. Thai, the Court sees no reason to decline supplemental jurisdiction over Plaintiff's state law claims. Under 28 U.S.C. § 1367, "the district courts shall have supplemental jurisdiction over all other claims that

are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Here, the Court retains jurisdiction over the Section 1983 claims, as well as the state law negligence claims. In addition, the Court will grant Plaintiff's motion to amend the Complaint in order to add a state law medical malpractice claim against Dr. Thai—a claim that forms part of the same case or controversy still pending before the Court.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Tuong V. Thai's April 1, 2010, Motion for Summary Judgment (docket # 19) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Amend the Complaint (docket # 26) is GRANTED.

s/ Gerald E. Rosen
Gerald E. Rosen
Chief Judge, United States District Court

Dated: July 23, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 23, 2010, by electronic and/or ordinary mail.

s/Ruth A.Gunther

Case Manager

(313) 234-5137