**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALLEN QUIGLEY, as Administrator of
the Estate of SCOTT QUIGLEY, JR.,
deceased,

                    Plaintiff,                No. 2:09-cv-14221
                                               Hon. Gerald E. Rosen

vs.

TUONG V. THAI, M.D.,

                    Defendant.
_____/

**OPINION AND ORDER DENYING**
**DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on           July 25, 2011          

PRESENT:  Honorable Gerald E. Rosen
                    United States District Judge

**I. INTRODUCTION**

Plaintiff Allen Quigley filed this prisoner civil rights matter on October 27, 2009,

as administrator of the estate of Scott Quigley, Jr. ("Decedent"), pursuant to 42 U.S.C. §

1983. Plaintiff alleges that Defendant Dr. Tuong V. Thai, M.D., an employee of the

Michigan Department of Corrections and/or Correctional Medical Services, Inc., violated

Decedent's Eighth Amendment right to have serious medical needs addressed, while

Decedent was incarcerated, by prescribing and administering two drugs in combination that may have caused his death.  Plaintiff further alleges that Defendant's actions constitute gross negligence under Michigan law.[1]

On April 1, 2010, while discovery in this matter was ongoing, Defendant Thai moved for summary judgment on qualified immunity grounds.  Because qualified immunity protects a public official from the burden of further litigation, on April 29, 2010, the Court ordered a stay of discovery pending resolution of this motion.  *See Pearson v. Callahan*, - U.S. -, 129 S.Ct. 808, 815 (2009).

On July 27, 2010, Defendant's first motion for summary judgment was denied. The Court found that a genuine issue of material fact existed as to whether Defendant knew or should have known that his course of treatment created a substantial risk of serious harm. (Amen. Op. Ord. 16.)  Moreover, the causal connection between Defendant's actions and Mr. Quigley's death was a "factual issue warranting further discovery." (Amend. Op. Ord. 9.)

On December 29, 2010, Defendant filed a second motion for summary judgment, once again, claiming qualified immunity.  Defendant argues that additional discovery clearly demonstrates that there exists no genuine question of material fact concerning any liability on his behalf. (Sec. Mot. for Summ. J. 1.)

---

[1] Plaintiff filed a motion for leave to amend/correct the Complaint in order to add a state law claim of medical malpractice. (Dkt. # 26.)

The Court now addresses Defendant's second motion for summary judgment. Having reviewed the parties' briefs in support of and in opposition to Defendant's motion, the accompanying exhibits, and the record as a whole, the Court finds that the relevant facts, allegations, and legal arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process. Accordingly, the Court will decide the Defendant's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court finds that Defendant's second motion for summary judgment must be denied.

## II. FACTUAL BACKGROUND

Scott Quigley, Jr., deceased, was a 23-year-old man with no known life-threatening physical ailments or conditions. On February 13, 2008, Mr. Quigley was transferred from the custody of one Michigan Department of Corrections (MDOC") facility to another, the Charles Egeler Reception and Guidance Center. In the month that followed, Mr. Quigley was under the medical supervision and care of Correctional Medical Services, Inc. ("CMS"), a contracted service provider of MDOC. At the Guidance Center, MDOC/CMS employees, psychiatrist Dr. Tuong V. Thai, and physician's assistant Steven Garver, treated Mr. Quigley for moderate depression.[2]

On February 13, 2008, a registered nurse at the Guidance Center facility completed the medical intake assessment for Decedent. The assessment revealed that Decedent had been taking Amitriptyline 50 mg, a tricyclic anti-depressant medication also known by the

---

[2] Defendants Garver and CMS were dismissed from the case on December 2, 2010.

3

brand name Elavil ("Elavil"), at the previous MDOC facility.  The nurse recommended further psychiatric evaluation and treatment.  The next day, on February 14, 2008, Mr. Garver completed a physical examination of Mr. Quigley and prescribed three months of Elavil.

A few weeks later, on March 7, 2008, Defendant completed a "Comprehensive Psychiatric Assessment" of Decedent.  Defendant's assessment record reflects that he discussed the Elavil with Decedent.  Decedent expressed an interest in trying a different anti-depressant.  Defendant then prescribed Trazodone 100 mg, a tetracyclic anti-depressant medication also known by the brand name Desyrel ("Desyrel") for a four-week trial period.[3]  Further, the assessment record indicates that Defendant discussed the side effects of Desyrel with Decedent.

On March 10, 2008, Decedent was found dead in his cell.  His Medical Assessment Record, a medication chart, confirms that he was administered both Amitriptyline and Trazodone during the previous three days.  The Emergency Treatment Nursing Notes, the emergency form completed upon discovery of his death, also confirms that he was administered both drugs at least on March 9, 2010.

There are no documents in the record definitively ascertaining Decedent's cause of death.  Plaintiff provides the affidavit of psychiatrist Dr. Gerald A. Shiener, M.D., and

---

[3] Although MDOC medical records liberally interchange the brand name and generic names of these medications, the general documentation provided by Plaintiff describing the risk from Serotonin Syndrome (described *infra*) discusses that the key concern is mixing a "tetracyclic" and a "tricyclic" medication, regardless of the brand or generic name of the medication.

accompanying documentation to indicate that these two types of drugs in combination are known – at least within the psychiatric field – to be dangerous because they can cause "Serotonin Syndrome." The syndrome is known to be potentially lethal through effects such as hypothermia caused by the heightened activity of the body's central nervous system. Plaintiff further proffers the testimony of Dr. Werner Spitz, M.D., a board certified forensic pathologist, that the administering of the two drugs in combination more likely than not caused Mr. Quigley's death.

### III. ANALYSIS

#### A.  Summary Judgment Standards Governing this Motion

Defendant Thai seeks summary judgment in his favor on Plaintiff's § 1983 federal claims as well as the Michigan state-law claim on qualified immunity grounds.[4]  Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548

---

[4] As to the state law claims, Defendant argues that the Court should decline to exercise supplemental jurisdiction over them if the § 1983 claims are dismissed. (Sec. Mot. for Summ. J. 8-9.)

(1986). In addition, where a moving party seeks an award of summary judgment in its favor on an issue as to which it bears the burden of proof, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, a party "ascertaining that a fact cannot be or is genuinely disputed must support the evidence by citing to admissible evidence in the record." Fed. R. Civ. P. 56(c)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack*, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

## B. Genuine Issues of Fact Exist Regarding Defendant's Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). Defendant, through his official

capacity as a service provider for the state of Michigan, claims qualified immunity for his actions during Decedent's course of treatment. The Supreme Court recently held that qualified immunity necessarily balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield government officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, - U.S. -, 129 S. Ct. 808, 815 (2009). To overcome a public official's claim of qualified immunity, a plaintiff must show that the facts, taken in a light most favorable to the plaintiff, would allow a reasonable fact finder to determine (1) that there was a violation of a constitutional right, and (2) that the right was "clearly established" at the time of the violation. *See generally Pearson*, 129 S. Ct. 808.[5]

Federal courts in the Sixth Circuit may also consider whether the official's actions were "objectively reasonable" in the context of the facts. *See Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)). Thus, if the official's actions were objectively reasonable, even if those actions constitute a constitutional violation of a clearly established right, the official may still be entitled to qualified immunity. *Id.* Once qualified immunity has been invoked, the burden is squarely on the plaintiff to show that qualified immunity is inappropriate. *See Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

---

[5] *Pearson* provided district courts discretion to decide the order in which to address these two prongs of the analysis, overturning, in part, the earlier qualified immunity standard set out in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), which rigidly structured the analysis. Nonetheless, the *Saucier* approach of initially exploring whether there was a constitutional violation is still often beneficial, and is therefore employed here. *Pearson*, 129 S. Ct. at 815.

7

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment. U.S. CONST. amend. VIII; *see Wilson v. Seiter*, 501 U.S. 294, 296-97, 111 S. Ct. 2321 (1991).  Violations of a prisoner's Eighth Amendment rights with respect to medical care "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285 (1976).  Allegations of malpractice or negligent treatment are insufficient to entitle a plaintiff to relief. *Id.*  To state a viable Eighth Amendment claim, a prisoner must present both an objective and a subjective component.  The objective component requires a showing that the prisoner was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994); *accord Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  The subjective component requires a showing that the prison officials acted with deliberate indifference or recklessness, that is more than mere negligence. *See Farmer*, 511 U.S. at 834-37.  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

For the reasons set forth below, the Court finds that, at this juncture of the proceedings, Plaintiff has presented sufficient proof to create genuine issues of material fact as to whether Defendant's course of treatment entitles him to a qualified immunity defense.

8

In responding to Defendant's first motion for summary judgment, the Court concluded that "Plaintiff has proffered medical evidence from which it could be circumstantially inferred that the treatment Decedent received for depression caused his death." (Amen. Op. Ord. 9.)  The Court reached this conclusion when Defendant failed to provide any evidence contradicting this causal theory.

Defendant now presents four expert opinions that call into question the "assumptions, reliability, and conclusions" of the medical evidence presented by Plaintiff. (Sec. Mot. for Summ. J. 5.)  In sum, these medical professionals dispute the "basic psychiatric principle" that the anti-depressants the Defendant prescribed were widely known to be a potentially lethal combination.  *See* Shiener Aff. ¶ 3.  Furthermore, the Defendant argues that Dr. Shiener "offers no scientifically reliable basis" for his conclusion, (Sec. Mot. for Summ. J. 12).  The Court must nonetheless view all the evidence in the light most favorable to the nonmoving party.  *Pack*, 434 F.3d at 813.

As such, the Plaintiff has previously presented to the Court evidence which, when viewed in a most favorable light, could induce a reasonable jury to conclude that Defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and [he] ignored that risk."  *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.  The Defendant has merely proffered to the Court a "battle of the experts." Because the evaluation of expert testimony is generally left to the jury, it would be improper for this Court to grant the motion simply because the Defendant's expert opinions may be

"lengthier" or "more scientific." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Instead, Defendant has presented an additional material question of fact as to whether it was indeed a "basic psychiatric principle" that mixing tricyclic and tetracyclic medications are highly dangerous and potentially lethal.

The Defendant, however, is of the position that because the experts disagree as to whether the course of treatment was widely known to be dangerous, no "rational finder of fact could believe Shiener's assertion that every expert in the field should know not to prescribe these drugs together." (Sec. Mot. for Summ. J. 13.) Defendant's argument suffers from a logical misstep. The mere fact that a proffered group of experts disagree about whether Defendant's course of treatment was widely known to be dangerous does not indisputably establish that experts in the field are not in fact expected to know of these potential dangers. Instead, it is the role of the jury to discern the expert testimony and answer, as a question of fact, whether the Defendant knew or should have known that prescribing the two drugs in tandem was potentially lethal. *Id.* at 113.

The Court previously denied Defendant's fist motion for summary judgment, which was based on the doctrine of qualified immunity. (*See* Amen. Op. Ord.) Therefore, in the absence of any new evidence that would persuade the Court otherwise, our previous holding must stand. The Defendant has presented additional evidence, but this evidence does not remove the existence of a genuine issue as to a material fact in this case. The Court continues to believe that "Plaintiff has produced evidence to suggest that

10

the risk of the drug interaction at issue was widely known and that a reasonable psychiatrist in Defendant's position would have concluded that a substantial risk of fatal or serious injury would result from the prescription of the two drugs in combination." (Amen. Op. Ord. 16.)  For the aforementioned reasons, it is the opinion of the Court that summary judgment based on qualified immunity is not warranted.  Therefore, Defendant's second motion for summary judgment is denied.

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendants' second motion for summary judgment [Dkt. # 53] is DENIED.

SO ORDERED.

s/Gerald E. Rosen                        

Chief Judge, United States District Court

Dated: July 25, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 25, 2011, by electronic and/or ordinary mail.

s/Ruth A.Gunther                    
Case Manager
(313) 234-5137

11